## Wurster's Estate

*Emanuel Moss*, for accountant;   *Charles Lehr*, for residuary legatee.
*T. B. K. Ringe* and *James F. McMullan*, for claimants.

VAN DUSEN, J., November 28, 1934.—William Wurster died October 27, 1933, leaving a will, duly probated November 23, 1933. . . .

A claim by the Commonwealth of Pennsylvania for the maintenance and support of William Wurster, Jr., an incompetent son of the testator, at the Philadelphia Hospital for Mental Diseases, Byberry, Pa., from March 1, 1933, to October 27, 1933, the date of the testator's death, 34 3/7th weeks at $2, $68.86, was admitted to be correct.

A claim was presented by the City of Philadelphia for the maintenance of said son at the Philadelphia General Hospital from March 28, 1922, to February 21, 1927, 256 weeks at $5 per week, $1,280, less payments on account $640, balance due $640; also for maintenance of said son at the Philadelphia Hospital for Mental Diseases at Byberry from February 21, 1927, to October 27, 1933, 348 6/7 weeks at $5 per week, $1,745.42, less payments on account, $872.71, balance due $872.71.

The total of the city's claims is $1,512.71. The statute of limitations having been pleaded, the city has reduced its claim to the period of 6 years immediately preceding the testator's death, and now claims the sum of $782.50.

A stipulation of facts has been agreed to . . . wherein it appears that the cost of maintaining the average patient at the hospitals above mentioned is

and has been $7 per week; the Commonwealth has paid to the city the sum of $2 per week, leaving the cost to the city $5 per week; that William Wurster, Sr., this testator, paid to the city for the maintenance of William Wurster, Jr., the sum of $2.50 each week, subsequent to the receipt by him of a statement mailed by the Bureau of Hospitals of the Department of Public Health of the City of Philadelphia, in return for which the decedent received a receipt duly issued by the house agent of the Philadelphia Hospital for Mental Diseases at Byberry.

The material parts of said statement and receipt are as follows:

"For the Board of William Wurster, 11163. From 9-1-33 to 10-1-33. 4 2/7 week at $2.50. $10.71.

"Received of Mr. Wurster the sum of Ten and 71/100 Dollars in payment for maintenance of William Wurster No. 11163 from 9-1-33 to 10-1-33.

($10.71/100)                              "(Signed)  JOHN BEALMEAR, JR.,
                                                        "House Agent."

The claim of the city is objected to on the ground that there is nothing due, as the bills and receipts given by the city for the payments of $2.50 per week made by the decedent upon their face show payment, and the city is precluded thereby.

The claim of the city is based on the liability imposed on a father to maintain a child who is an inmate of an institution, maintained in whole or in part by the Commonwealth, "and who is legally able so to do". The court making an order for support shall take "into consideration their ability to pay for said maintenance": Act of June 1, 1915, P. L. 661, secs. 3, 4 and 7; Act of May 10, 1921, P. L. 438, secs. 2 and 3, 71 PS §1783, 1784. Receovery may be had in the orphans' court against the estate of the parent, though there has been no order of support in his lifetime: Harnish's Estate, 268 Pa. 128; Geisler's Estate, 76 Pa. Superior Ct. 560; Martin's Estate, 4 D. & C. 31. If it be argued that the Act of June 1, 1915, applies only to the claims of the Commonwealth, this decedent's estate is nevertheless liable to the City of Philadelphia under the Act of June 13, 1836, P. L. 539. See Geisler's Estate, supra, at p. 563.

Section 7 of the Act of 1915 provides for claims of the Commonwealth and the county, and that in case of insufficient funds to pay both in full they are to be paid pro rata: Martin's Estate, supra. But in the instant estate, as in Martin's Estate, there is sufficient to pay both claims in full.

The city's claim is $782.50. It now appears that the parent left an estate appraised for inheritance tax purposes at $16,415.88. There was no claim that the parent is unable to pay.

On the part of the city there is a prima facie right to the full cost of maintenance, and on the part of the parent there is a right to temper this liability because of inability to pay. We may grant that a compromise sum could be arrived at by agreement between the parent and the authorized representative of the city. The only evidence of such an agreement of compromise is that to be deduced from the uniform payment of $2.50 per week, and the receipt for the same "in payment for maintenance" by a person designated as "house agent".

In my opinion, an agreement by the city to take less than the face of its claim in full payment should be evidenced by something more than an inference from a course of conduct. There is nothing in the series of receipts to show that there was any claim for more, or offer of less, or that there was any dispute

to compromise. For all that appears, there was no consideration for any supposed agreement of the city to take $2.50 per week in full settlement. It is possible that a practice might be indulged in of exacting from the parent in his lifetime less than the full sum, in order to leave that parent something for his own support, and yet not to release a claim for the balance on the death of the parent as against his heirs. See Geisler's Estate, 76 Pa. Superior Ct. 560, where the court in banc (Mitchell, J.) said (p. 562) : "It may have been that the mother's circumstances led the claimants to defer asking for a payment which might have pauperized her.

". . . Whatever may have been the decedent's financial condition in her lifetime, the account here shows an estate more in value than the amount of these claims", i. e., Commonwealth and county claims.

Also, it does not appear that the house agent who receipted for this money had authority to agree to compromise. It is not necessary to determine who would have such authority on behalf of the city.

The claim of the City of Philadelphia is allowed in the sum of $782.50. . . .

NOTE.—No exceptions were filed to the foregoing adjudication.